THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Respondent, *v.* SARAH E. SHIPMAN et al., Impleaded, etc., Appellants.

The provision of the Revised Statutes (1 R. S. 737, § 124), declaring that "every instrument executed by the grantee of a power, conveying an estate, or creating a charge which such grantee would have no other right to convey or create, unless by virtue of his power, shall be deemed a valid execution of the power, although such power be not recited or referred to therein," was not intended to change then existing rules; and whenever, in addition to the power, the grantee has an independent interest in the property, whether legal or equitable, the rule of the statute does not apply, and the instrument will not be deemed an execution of the power, but only a conveyance of the independent interest.

The will of S. devised his real estate to his wife as long as she should remain his widow, and upon her death or remarriage to their children. He made her executrix, and the will authorized her to make advances from the property, from time to time, in her discretion, to the children "for maintenance and support," and empowered her to mortgage, lease and dispose of such property for the purpose of carrying into effect the provisions of the will. The widow married and subsequently exe-

cuted a mortgage on said real estate in her individual name to secure a loan. The mortgage contained no reference to the character of the mortgagor as executrix, or to the power to mortgage contained in the will. This mortgage was paid from the proceeds of a loan obtained from plaintiff upon a mortgage of the same property, executed by the widow individually and as executrix. In an action to foreclose the latter mortgage, it appeared that plaintiff had knowledge that the purpose of the mortgagor was to pay the prior loan with the money borrowed; such prior loan was procured for the benefit of the widow's second husband. *Held*, that upon the marriage of the widow the fee of the real estate vested in the children, subject to the execution of the power of sale and to the widow's right of dower; that the interest mortgaged must be restricted to the individual interest which the mortgagor had as doweress; that although her dower right while unassigned did not give her a legal estate in the land, it was a legal interest and constituted property capable in equity of being sold, transferred and mortgaged by her.

*Marvin* v. *Smith* (46 N. Y. 571) distinguished.
*Mutual Life Ins. Co.* v. *Shipman* (50 Hun, 578) reversed.

(Argued January 20, 1890; decided February 25, 1890.)

Appeal from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made the first Tuesday of January 1889, which reversed a judgment in favor of defendant, entered upon a decision of the court on trial at an equity term.

This was an action for the foreclosure of a mortgage.

The facts are sufficiently stated in the opinion.

*A. J. Abbott* for appellant. The children of the testator took, under the will, an absolute fee in the real estate devised, subject, however, to a general power in trust in the executrix (which did not cease upon her remarriage) to mortgage the same, for the purpose of raising money to make advances to the children for their maintenance and support (108 N. Y. 24.) The bond and mortgage for $1,500, given by Mrs. Campbell to the Rochester Savings Bank, were made by her in her individual name and capacity, and not as the donee of the power in trust, aforesaid. (Perry on Trusts, § 511; *Blagge* v. *Miles*, 1 Story, 426; *Blake* v. *Hawkins*, 8 Otto, 315; *White* v. *Hicks*, 43 Barb. 87; 33 N. Y. 383.) The sav-

ings bank bond and mortgage cannot be construed as having been executed by Mrs. C., under and by virtue of her general power in trust.   (1 R. S. 739, § 124; *Church* v. *Bull,* 2 Den. 430; *Lewis* v. *Smith,* 9 N. Y. 502; 4 Kent's Comm. 372; *Finch* v. *Finch,* 10 Ohio St. 501; *Lothrop* v. *Foster,* 51 Me. 367; Perry on Trusts, § 511; R. & L. Law Dict. "Interest;" Bouvier's Law Dict. "Charge;" 2 Pomeroy on Eq. Juris. 163, § 1188.)   Mrs. Campbell, at the time the savings bank mortgage was executed, had not only an absolute consummate, vested interest in the property covered by the same, but she also had an interest, which she could avail herself of, by sale and conveyance, even though her dower had not, as yet, been formally admeasured and assigned to her.   (1 Cruise's Dig. 130, sub. 31; *Steele* v. *Wade,* 30 Hun, 458; *Simar* v. *Canaday,* 53 N. Y. 304; *Moore* v. *Mayor, etc.,* 8 id. 110; *Doty* v. *Baker,* Id. 110; *Payne* v. *Becker,* 87 id. 157; Code Civ. Pro. § 191, sub. 3; Bouvier's Law Dict. "Assignment;" 3 R. S. [7th ed.] 2222, § 38; *C. C. Bank* v. *Risley,* 19 N. Y. 370; Code Civ. Pro. § 1877; *Potter* v. *Everitt,* 7 Ir. Eq. Cas. 152; *Strong* v. *Clem,* 12 Ind. 37; *Davis* v. *N. Y., L. E. & W. R. R. Co.,* 5 N. Y. S. R. 819; 3 Pom. Eq. Juris. § 1383; *Pope* v. *Mead,* 99 N. Y. 201; *Bostwick* v. *Beach,* 103 id. 414; *Jones* v. *Fleming,* 104 id. 418; *Finch* v. *Finch,* 10 Ohio St. 501; *Lothrop* v. *Foster,* 51 Me. 367; *Marvin* v. *Smith,* 46 N. Y. 571; *Aikman* v. *Harsell,* 98 id. 186; Code Civ. Pro. § 1910; 1 Pom. Eq. Juris. § 395.)   The plaintiff had notice that the payment, by its agent, of the savings bank's bond and mortgage out of the proceeds of its loan would be a misappropriation of the fund.   (Perry on Trusts, § 222; Hill on Trustees, 165; 2 Pom. Eq. Juris. 115, § 667; *Holden* v. *N. Y. & E. B. K.,* 72 N. Y. 286.)   The plaintiff is not within the protection of the statute (3 R. S. [7th ed.] 2183, § 66), but the case is governed by the rule in equity before the statute. (Perry on Trusts, § 602; *Field* v. *Scheffelin,* 7 Johns, Ch. 160; *Pendleton* v. *Fay,* 2 Paige Ch. 202, 205; *Anderson* v. *Van Allen,* 12 Johns. 343; *Murray* v. *Ballou,* 1 Johns. Ch. 575; *Parker* v. *Connor,* 93 N. Y. 124; *Brush* v. *Ware,* 15

Pet. 94; Perry on Trusts, §§ 800, 814, 831; *Champlin* v. *Haight,* 10 Paige Ch. 282; 1 R. S. 730, § 66.) When the motive of a party, or witness, in performing a particular act, becomes material, he may himself testify in regard to it. (Abbott's Trial Brief, 93, 98.)

*Albert H. Harris* for respondent. Mrs. Campbell, at the time of executing the mortgage to the Rochester Savings Bank, had no interest in the land to which the mortgage could attach. (1 Cruise's Dig. chap. 4, § 1; *Scott* v. *Howard,* 3 Barb. 319; *Marvin* v. *Smith,* 46 N. Y. 571; *Ritchie* v. *Putnam,* 13 Wend., 524; *Aikman* v. *Harsell,* 98 N. Y. 186; *Tomkins* v. *Fonda,* 4 Paige, 448; *Jackson* v. *Aspell,* 20 Johns. 411; *Jackson* v. *Van Derheyden,* 17 id. 166; *Lawrence* v. *Miller,* 2 N. Y. 245, 254; *Moore* v. *The Mayor,* 8 id. 110; *Pennington* v. *Yell,* 52 Am. Dig. 262, 274; *Yates* v. *Paddock,* 10 Wend. 528; *Strong* v. *Bragg,* 7 Blackf. 62; *Foster* v. *Gordon,* 5 Pick. 185; 2 Scribner on Dower, 42; 4 Kent's Comm. § 61.) The mortgage to the Rochester Savings Bank was executed under the power given to his executrix by Parson G. Shipman's will. (1 R. S. 737, § 124; Laws of 1875, chap. 371, § 26.)

Ruger, Ch. J.    Parson G. Shipman died January 18, 1871, leaving him surviving Elizabeth L. Shipman, his widow, and seven children, and owning real estate, which he devised to his wife so long as she should remain his widow, and upon her death or marriage to the children born to him by her. The widow was made executrix of the will, and was authorized to make advances from the property, in her discretion, from time to time, to his several children " for maintenance and support," and was empowered to mortgage, lease and dispose of such property for the purpose of carrying into effect the provisions of the will. In June, 1876, before disposing of the real estate, the widow married one Campbell, and was his wife at the time of the execution of the mortgages giving rise to this controversy. In April, 1877, the widow executed a mortgage to

the Rochester Savings Bank on said real estate in her individual name, to secure the repayment to the mortgagee of a loan of money. The mortgage contained no reference to the character of the mortgagor, as executrix, or to the power to mortgage contained in the will; but appeared, on its face, to be the individual obligation of the widow. This mortgage was paid from the proceeds of a subsequent loan obtained from the plaintiff upon a mortgage of the same property, executed by her individually and as executrix, and the question in this case is whether the plaintiff, having knowledge of the purpose of the borrower to pay the prior loan with the moneys borrowed, had notice that such moneys were not to be used for the purposes of the will; the accomplishment of such purposes being the only authority under which she was, by the will, authorized to mortgage such real estate.

It is not disputed but that the widow upon the death of her husband became entitled to a right of dower in the real estate, and upon her marriage with Campbell, in 1876, the fee of the real estate vested in the children, subject to the execution of the power, and also subject to the right of dower. It was also established by the proof that both mortgage loans were, in fact, made for the benefit of Campbell, the widow's second husband, and not for any purpose of the will. The question in the case is, therefore, whether the interest attempted to be transferred by the first mortgage is ascribable to the power conferred by the will to mortgage the whole estate, or must be restricted to the individual interest which the mortgagor concededly had as doweress in such lands. In the absence of the provision contained in the chapter of the Revised Statutes relating to powers, there could, we think, be but little doubt that it would be held to convey only such interest as the mortgagor possessed in her individual right. It is said by Perry, in his work on Trusts (§ 511), that "if the donee of a power to sell land has also an interest in his own right in the same land, his deed of the land, making no reference to the power, will convey only his own interest, for there is a subject-matter for the deed to operate upon, excluding his power." Sugden

on Powers (3 Am. ed. p. 477) states the rule: "The doctrine settled by the decisions seems to be this: when the donee of a power to sell land possesses also *an interest* in the subject of the power, a conveyance by him without actual reference to the power, will not be deemed an execution of it, except there be evidence of an intention to execute it or at least in the face of evidence disproving such intent." Kent's Commentaries (vol. 4, p. 371 [11th ed.]) says: "The general rule of construction, both as to deeds and wills, is that if there be an interest and a power existing together in the same person over the same subject, and an act be done without a particular reference to the power, it will be applied to the interest and not to the power. If there be any legal interest on which the deed can attach, it will not execute a power."

The rule of construction laid down in these authorities seems to have been established long before the enactment of our Revised Statutes, and was in the immediate contemplation of the revisors when they framed section 124 of article 3, title 2, chapter 1 of part 2, reading as follows: "Every instrument executed by the grantee of a power, conveying an estate or *creating a charge*, which such grantee would have no other right to convey or create, unless by virtue of his power, shall be deemed a valid execution of the power, although such power be not recited or referred to therein." This section is couched in broad and liberal language, and seems to have been adopted for the purpose of combining, in the statutory regulations regarding powers, all such existing rules in respect to the subject as it was thought desirable and necessary to adopt and enforce in this country. There is no reason for supposing that the law makers intended to change the existing rule and adopt one which should create a marked and essential difference in the law, from what it had been for a long period of time in the country from whose jurisprudence our statutes in relation to powers were mainly derived. The rule was founded in reason and good sense, and was intended to provide that whenever a single power exists, under which a grantor may convey or mortgage real estate, his conveyance is attributable to the exer-

cise of the power actually possessed by him; but that when-
ever, in addition to a power, he is also invested with other
independent interests or powers, whether legal or equitable,
with respect to the same property, under the authority of either
of which he may lawfully act, the rule of the statute should
not apply.

There can be, we think, no question but that the mortgagor
in this case came within the meaning and spirit of this rule, as
a person having independent rights and interest in the prop-
erty mortgaged, in addition to the testamentary power. Aside
from the power, she had possession of the land under a consum-
mate right of dower, of which she could enforce admeasurement.
Although this right, while unassigned did not give her a legal
estate in the land, it is now well settled that it was a legal
interest and constituted property which was capable in equity
of being sold, transferred and mortgaged by the doweress, and
liable to be reached by creditors in payment of her debts.
(*Tompkins* v. *Fonda*, 4 Paige, 448; *Simar* v. *Canaday*, 53
N. Y. 298; *Payne* v. *Becker*, 87 id. 153; *Pope* v. *Mead*, 99
id. 201; *Bostwick* v. *Beach*, 103 id. 414.) Judge Folger, in
*Simar* v. *Canaday*, said: "We think it must be considered as
settled in this state, notwithstanding *Moore* v. *Mayor, etc.*, and
some dicta in other cases, that as between a wife and any other
than the state, or its delegates or its agents exercising the right
of eminent domain, an inchoate right of dower in lands is a sub-
sisting and valuable interest which will be protected and pre-
served to her, and that she has a right of action to that end."
Judge Danforth, in *Payne* v. *Becker*, says: "Both upon prin-
ciple and authority, therefore, we must hold that the widow's
right or claim of dower is property, and that, like any other
species of property, it may be reached and applied to the pay-
ment of her debts." Judge Rapallo, in *Bostwick* v. *Beach*,
says: "The point made on the part of the defendant, that she
could not dispose of her dower before it was admeasured, is
decided adversely to her in the case of *Payne* v. *Becker*." In
*Pope* v. *Mead* it is said, that a dower right, although not
admeasured, is an absolute right, which is assignable.

That dower, before assignment, is an interest in lands within the meaning of the Statute of Frauds, is held in *Finch* v. *Finch* (10 Ohio St. 501), *Lothrop* v. *Foster* (51 Maine, 367), and is fairly implied in *Tompkins* v. *Fonda* and *Payne* v. *Becker* (*supra*). It has been held that a release of an inchoate right of dower constitutes a good consideration for a promise to pay (*Garlick* v. *Strong*, 3 Paige, 440), and that the existence of an inchoate right of dower in the equity of redemption of mortgaged premises, constitutes a good objection to title by a vendee in an action against him for specific performance (*Mills* v. *Van Voorhies*, 20 N. Y. 412). Judge Selden, writing in that case upon the effect of an omission to make the wife of a mortgagor a party to a foreclosure suit, says: "Whether at common law it would be necessary to make her a party must depend upon the question whether she has any interest, either legal or equitable, complete or inchoate, in the mortgaged premises. If she had such an interest, however remote, then, upon the plainest and most familiar principles, that interest cannot be affected, unless by virtue of some statute, by a suit in equity to which she is not a party,  *  *  *  and a purchaser under such a foreclosure would not obtain an unincumbered title." Such a right, although a mere chose in action and constituting no legal estate in the land, is, nevertheless, one which cannot be enforced against any property, other than the land, and when enforced creates a legal estate therein paramount to the right of those holding the legal title. A mortgage of such an interest operates as a conditional transfer of the right to enforce admeasurement of dower, and enables the mortgagee to reduce to possession so much of the land as is necessary to satisfy the requirements of the mortgage.

Property capable of being sold, transferred and delivered, or charged, by means of legal proceedings, with the payment of debts, is, we think, such an interest as enables its owner, within the meaning of the statute, to create a charge thereon. (Bouvier's Law Dict. title "Charge;" Thomas on Mortgages, § 66.)

Although the right of a doweress in lands, before assign-ment, is not an estate, it is nevertheless a charge and incum-brance upon them, and is capable of being enforced and of producing a legal estate. It is, in that respect, similar to the right which a mortgagee has in the lands mortgaged. The interest of neither constitutes an estate in lands ; but both are interests, which may be pledged, transferred or conveyed by any appropriate instrument evidencing an intent to so trans-fer them, and in neither case can the lands be effectually trans-ferred by the legal owners, so as to free them in the hands of any subsequent grantees from the respective claims of the doweress, or mortgagee, or their assignees. The real question under the statute would seem to be whether the mortgagee had a transferable interest in the mortgaged premises ; one which would be available in the hands of her transferee as security for a debt. If so, then her interest was sufficient to bring her within the reason and meaning of the statute. A consideration of the object and purposes of a statute affords the safest and most reliable guide for the ascertainment of its intent and of the meaning and effect which should be ascribed to it.

In the statute referred to, the revisors, obviously, did not attempt to create or define estates in lands, but merely pre-scribed a rule of construction for the interpretation of convey-ances affecting real estate, which might be executed under the authority of a power.

It is quite obvious that an interest possessed by a grantor in real estate, whether legal or equitable, that is effectual to create a transfer of property, is equally persuasive as any other in furnishing a motive or reason for making or receiving a par-ticular conveyance, and would furnish an equally strong cir-cumstance from which the imputation of a legal intent might be derived. Both equitable and legal interests in real estate are valuable and capable of transfer and are equally effective in determining the intent with which a particular conveyance is made.

The widow having, therefore, an interest in the land at the time of the execution of the first mortgage, capable of being

sold, transferred and mortgaged, aside from the right to sell or mortgage under the power, her mortgage is not affected by the statute referred to. The contention, that an unassigned right of dower consummate is not transferable, comes with curious effect from a party presenting a record which shows a decree in its favor under a mortgage authorizing a sale of this dower right for the satisfaction of its debt.

The case of *Marvin* v. *Smith* (46 N. Y. 571), cited to show the non-assignability of a right of dower, in the court below, hardly supports the proposition. That case holds only that the wife's inchoate right of dower " is incapable of being transferred or released by her during coverture, except to one who already had, or who by the same instrument received an independent interest in the estate, nor could she bind herself, personally, by a covenant or contract affecting her dower right."

This case proceeded upon the disabilities attaching to the state of coverture and did not affect the right of a widow to contract, with reference to, or convey a consummate right of dower.

Cases relating to the question of proper parties to actions upon assigned choses in action, prior to the adoption of the Code requiring them to be brought in the name of the real party in interest, have no bearing upon the questions here presented, and need not be further considered.

The order of the General Term should be reversed and the judgment of the Special Term affirmed, with costs in the General Term and this court against the plaintiff.

All concur, except Earl, J., not voting and Peckham, J., not sitting

Order reversed and judgment affirmed.